UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____x

DAVID LEVY,

                                                    Civ. No: 1:21-cv-01415

                              Plaintiff,            **FIRST AMENDED**
                                                    **COMPLAINT**
                                                    **JURY TRIAL DEMAND**


LAWRENCE GARDENS APARTMENTS DEL, LLC,
LAWRENCE GARDENS APARTMENTS, LLC,
CAMMEBY'S REALTY CORP.,
CAMMEBY'S FUNDING, LLC,
CAMMEBY'S MANAGEMENT COMPANY, LLC,
REVONA PROPERTIES, and APARTMENT MANAGEMENT
ASSOCIATES LLC,

                              Defendants.
_____x

        Plaintiff, David Levy ("Plaintiff"), by and through his attorneys, Mark David Shirian P.C.,

complaining of LAWRENCE GARDENS APARTMENTS DEL LLC, LAWRENCE GARDENS

APARTMENTS LLC, CAMMEBY'S REALTY CORP., CAMMEBY'S FUNDING, LLC,

CAMMEBY'S MANAGEMENT COMPANY, LLC, REVONA PROPERTIES, APARTMENT

MANAGEMENT ASSOCIATES, LLC, (collectively "Defendants"), alleges, with personal

knowledge, unless where information and belief is stated, the following:


                              **Preliminary Statement**


        1.      This action is brought by David Levy to enforce the Americans with Disabilities

Act (the "ADA") and the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended

by the Fair Housing Amendments Act of 1988 (the "Fair Housing Act" or the "Act"), 42 U.S.C.

                                            1

§§3601-3619. As set forth in full below, David Levy alleges that defendants, the owners, developers, & managers of the Lawrence Gardens apartment complex located at 3315/3323/3301 Nostrand Avenue, Brooklyn, New York 11229 ("the subject buildings") (NYC Block/Lot 7309/40), a residential apartment complex in Brooklyn, New York, have unlawfully discriminated against plaintiff David Levy, a person with disabilities, under the ADA and Fair Housing Act by failing to design, construct and manage the subject buildings so as to be accessible to persons with disabilities.

2.      This action is also brought by Plaintiff to enforce Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. 3601, et seq., specifically 3604(b), 3613(c), and 3617 ("the Fair Housing Act"), and Title 8, chapter1, of the Administrative Code of the City of New York, N.Y.C. Admin. Code 8-101 *et seq*., as amended, specifically Code 8-107[5][a], 8-107[7] and 8-502. (hereafter the "NYCHRL" or the "City Law"), and Sections 296(5) and 296(6) of the New York State Human Rights Law, (hereafter "NYSHRL" or the "State Law"), against the Defendants, for their outrageous and unlawful mistreatment of Plaintiff during his tenancy with the Defendants for violations of sexual harassment, housing discrimination, hostile housing environment, and retaliation claims brought pursuant to the Fair Housing Act, and New York State and City Laws.

## Jurisdiction and Venue

3.      This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. § 1331, as it arises under the laws of the United States.

4.      This Court has supplemental (pendent) jurisdiction over Plaintiff's New York State and New York City claims pursuant to 28 U.S.C. § 1367(a).

5.      The New York State and New York City discrimination claims are inexorably related to, arise out of the same operative facts and circumstances as, and are a necessary, integral part of the federal law claims, such that the federal claims and New York State and New York City claims form part of the same case or controversy.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) as the events occurred in the Eastern District of New York and because the properties that are the subject of the instant action are located in the Eastern District of New York.

7.      Plaintiff is domiciled in the City of New York, County of Kings, State of New York.

8.      Plaintiff requested and was granted the right to sue by the Department of Housing and Urban Development.  Contracted through the New York State Division of Human Rights **A**dministrative **C**onvenience **D**ismissal (ACD) initiated by the plaintiff to seek an election to prosecute in federal court where to relief was granted by the C-ALJ

## The Parties

9.      Plaintiff alleges and re-alleges paragraphs 1-8 with the same force and effect as if fully set forth herein.

10.      Plaintiff David Levy is a citizen of the United States who resides at the premises located at 3315 Nostrand Avenue Brooklyn, New York, which is one of the three distinct addresses and wings that comprise the subject buildings.

11.      Defendant LAWRENCE GARDENS APARTMENTS DEL, LLC is a foreign limited liability company, existing under and by virtue of the laws of the State of Delaware.

12.    Defendant LAWRENCE GARDENS APARTMENTS, LLC is a domestic limited liability company, existing under and by virtue of the laws of the State of New York.

13.    Upon information and belief, heretofore and at all times hereinafter mentioned defendant LAWRENCE GARDENS APARTMENTS, LLC owned, operated, controlled, and managed the subject buildings.

14.    Upon information and belief, heretofore and at all times hereinafter mentioned defendant LAWRENCE GARDENS APARTMENTS DEL, LLC owned, operated, controlled, and managed the subject buildings.

15.    Defendant CAMMEBY'S REALTY CORP. ("Cammeby's Realty") is an entity with its principal place of business in New York, New York.

16.    Defendant CAMMEBY'S MANAGEMENT COMPANY, LLC ("Cammeby's Mngt") is an entity with its principal place of business in New York, New York.

17.    Defendant CAMMEBY'S FUNDING, LLC is an entity with its principal place of business in New York, New York.

18.    Upon information and belief, heretofore and at all times hereinafter mentioned defendant CAMMEBY'S REALTY CORP, CAMMEBY'S MANAGEMENT COMPANY, LLC, CAMMEBY'S FUNDING, LLC, owned, operated, controlled, and managed the subject buildings.

19.    Defendant REVONA PROPERTIES is a domestic corporation, existing under and virtue of the laws of the State of New York.

20.    Defendant APARTMENT MANAGEMENT ASSOCIATES, LLC ("AMA") is a domestic limited liability corporation, existing under and by virtue of the laws of the State of New York.

21.     Upon information and belief, heretofore and at all times hereinafter mentioned defendant AMA and REVONA PROPERTIES owned, operated, controlled, and managed the subject buildings.

## Allegations Common to All Counts

22.     The premises located at 3315/3323/3301 Nostrand Avenue, Brooklyn, New York (hereinafter "The subject buildings"), is a residential apartment building. Although it is one large building, due to its size, it is comprised of three separate addresses (3315/3323/3301 Nostrand Avenue). The building consists of three (3) wings. Each wing has six floors with one set of main entrance stairs and one elevator. There are two common lobbies for the subject buildings at 3315/3323 Nostrand Avenue, and a separate lobby for 3301 Nostrand Avenue. There is also a public access garage and two large tenants' ONLY (emphasis added) access pools in the rear of the property.

23.     The rental units at the Subject Building are "dwellings" within the meaning of 42 U.S.C § 3602(b), and "dwelling units" within the meaning of 24 C.F.R. § 100.21.

24.     All of the rental units at the Subject Building are "covered multifamily dwellings" within the meaning of 42 U.S.C. § 3604(f)(7) and 24 C.F.R. § 100.21.

25.     The subject buildings were first constructed in 1961.

26.     Upon information and belief, renovations were made to the subject buildings on or about 2001 to 2002.

27.     There is a prior residential management office (20+ years) for the subject buildings located off site at another apartment complex at 2611 West 2nd Street Brooklyn, New York.

28.     Although the main entrance and mailing address of the management office has a different address (600 Avenue Z, Brooklyn, New York), it is the same building as 2611 West 2nd Street.

29.     There is a current new residential management office for the subject buildings located off site at another apartment complex at 626 Sheepshead Bay Road Suite 620 Brooklyn, New York.

30.     Upon information and belief, the defendants receive federal, state and local funds and loan guarantees to assist in the purchase, operation, management and apartment rentals of the subject buildings and apartments.

31.     There exist numerous architectural barriers which make the features of the premises inaccessible to the plaintiff. The following is a non-exhaustive list of same, as a future inspection will reveal further inaccessible features:

1.   **Lobby at the Subject Buildings:**

   a)  The force required to open both of the main entrance doors leading to the lobby is excessive;

   b)  Upon entering the main entrance in the middle of the building, Plaintiff is required to go down four steps to a platform where he must then go down another two steps. Then from the base of the lobby, in order to access the left or right wing of the building, Plaintiff is required to go up two more steps (the defendants referred to this as the "sunken lobby design"); and

   c)  There are no ramps allowing for access to the main lobbies.

   d)  Overweighted solid glass 1-inch-thick access doors too heavy for handicap access.

   e)  Secondary keyed lobby vestibule doors force required to open the door is excessive and extreme and springs/snaps back with extreme force catching/trapping entrant and/or person(s) exiting.

**2.  Front Service Ramp at 3315 Nostrand Avenue:**

   a)  Service ramp slope is excessively steep;

   b) The force required to open the door is excessive;

   c) The doorway has an interior and exterior clearance which is too narrow;

   d)  There is no landing area in front of the door as per 5 x 5 feet flat unobstructed area at the top and bottom of the ramp as required by ADA;

   e) Upon egress from the building, handrails are only present along the first 24 feet of the ramp which is 41 feet in total;

   f) The automatic doors recently installed only function sporadically and require excessive force to open when not operational;

   g) Bowl Basin at the bottom of the ramps at the entry/egress door; and

   h) Handrails are located only at 24 ft at the bottom of the ramp, spiked metal located at the top 18 feet of the ramp-no handrails.

**3.  Front Service Ramp at 3323 Nostrand Avenue:**

   a)  Service ramp slope is excessively steep sloping off to the side;

   b)  The interior doorway pathway turn area has an inside clearance which is too narrow;

   c)  The total ramp length from the sidewalk is approximately 40 feet and there is no flat 5 x 5 feet landing area in front of the door as required;

   d)  The path width is too narrow at the interior entry/egress passageway;

   e)  Handrails are not present for the top 18 feet of the ramp from the building to the sidewalk upon egress/entry as required;

   f) The force required to open the door is excessive;

   g)  The automatic doors recently installed only function sporadically and require excessive force to open when not operational;

   h)  Bowl Basin at the bottom of the ramp at the entry/egress door; and

i) Handrails are only at 20 ft at the bottom of the ramp, spiked metal located at the top 18 feet of the ramp-no handrails.

**4.  Ramp at 3301 Nostrand Avenue**

a)  Service ramp slope is too steep;

b)  The force required to open the door is excessive;

c)  The door opens inward rather than outward;

d)  The doorway has an inside and outside clearance which is too narrow;

e)  There is no landing area in front of the door as per 5 x 5 flat unobstructed area at the top and bottom of the ramp as per ADA;

f)  There are no automatic doors located at 3301 Nostrand service ramp;

g)  The turn passageway to reach the elevator from service ramp is too narrow;

h)  Bowl Basin at the bottom of the ramp at the entry/egress door.

**5.  Rear Interior Ramp**

a)  The ramp slope is excessively steep at the midpoint causing walker and/or wheelchair to run away;

b)  The landing area is only four-square feet;

c)  The door way only has 36" of clearance space;

d)  The platform in front of the door inside the building is only 48" wide by 45" long;

e)  The platform on the outside of the rear service door does not comply with a 5 x 5 ft clearance platform and is obstructed by a concrete 2-foot wall with a fence on top delineating a gated deck area from the door opening pathway;

f)  Automatic door on operational intermittently requiring great force to open when not functioning; and

g)  Bowl Basin at the TOP of the ramp at the entry/egress door.

**6.  The Pool**

a)  Swimming pool does not have a manned and assisted operator lift for handicapped access to the water for the enjoyment of the facilities as able bodied persons;

b)  The threshold to the pool locker room/bathroom area is too high for a walker or wheelchair to gain access;

c)  Pool area entrance and exit door opens in the wrong direction;

d)  There is no bathroom stall designated as handicap accessible in designed or scope;

e)  The door to the bathroom stall swings inward instead of outward for access;

f)  There is no ADA compliant sink or toilet within the pool bathroom;

g)  The commode, privacy stall, showers and sinks in the changing area/locker room/pool house are not ADA-compliant in size and height); and

h)  Pool locker room/pool house entry area is not compliant with the mandated 5 x 5 ft entry area;

7. **Mailboxes within the subject building:**

a)  The height of the mailboxes within the subject buildings do not comply with the standards set forth by the ADA and adopted by the Fair Housing Act; and

b)  Table ledges exceed maximum height requirement of 36 inches.

8. **Management Office-Prior for 20+ years**:

a)  There is a full flight of exterior stairs to the office front door waiting area;

b)  Complainant must use a segregated entrance, steeply sloped service entrance to the residential building, referenced above, around the side of the building far from the entrance utilized by able-bodied individuals, then wait for long periods of time for an employee to come down and open the service door no matter the inclement weather which the complainant must endure;

c)  Entrance door opens inward rather than outward as required;

d)  The slope of the service ramp is excessively steep; and

e)   After entering the segregated service entrance for handicapped one must pass through the basement of the residential building, traverse a myriad of passageways, travel up an elevator, enter through the rear of the office, travel between narrow desk aisles to arrive at the main waiting area/front desk through the glares, stares and comments of employees to arrive to where other able body persons are waiting.

**9.  Garage:**

a)   There is no handicap accessible entrance except the ramp used by the automobiles;

b)  The ramp used by the automobiles is excessively steep with sewers and full width grates obstructing walker wheels, wheelchair wheels etc.;

c)   Side door Bowl Basin at the bottom of the stairs at the entry/egress door;

d)  Only other entry to garage is down 5 stairs to a locked door that opens onto the landing area, where plaintiff, who utilizes a walker, must lean over the front of the walker to access the lock or handle to open the door causing a fall hazard over the top and front of the walker. There is no wheelchair accessibility. Bowl Basin at the bottom of the pit.

e)   There are no designated handicapped parking spaces and proper handicapped van width parking spaces in the garage as required by any public accommodation garage registered and licensed with NYC Department of Consumer Affairs (DCA) based upon a percentage of the parking spaces in the facility.

**10. Elevator at 3315 Nostrand Avenue:**

a)  Defendants have consistently failed adequately repair, maintain and/or replace the elevators within plaintiff's building located at 3315 Nostrand Avenue.

32.    In or around the summer of 2016, immediately after Plaintiff filed a New York

State Division of Human Rights Complaint for disability discrimination, Ira Teper, an office-based

employee of Defendants, screamed at Plaintiff on the pool deck at the premises, without cause, provocation, reason or factual basis, claiming that Plaintiff is a "*faggot*", "*gay*", "*has anyone ever seen him with a woman*", "*he must be buying prostitutes*" "*he probably has AIDS*" implying poor moral turpitude, illegal activity at Plaintiff's residence.

33.    Plaintiff felt embarrassed, humiliated, and experienced and continues to experience emotional distress, anxiety, anguish and isolation at his own home.

34.    From that day forward, Plaintiff avoided sitting poolside at the deck in his chair out of embarrassment and people's commentary to others. Plaintiff sits isolated outside of the pool area alone.

35.    In or around a Sunday in late August 2019, Plaintiff was asleep in his chair outside the gated pool area isolated from everyone since 2016's verbal attack and Ira Teper approached the plaintiff and without cause, provocation or reason Teper an employee of ownership/management physically assaulted and committed battery on Plaintiff while Plaintiff was asleep in his chair, kicking Plaintiff's left leg and hip, awakening, and screaming why Plaintiff named him in a lawsuit (when no lawsuit had been filed in any court at that time). Ira Teper injured Plaintiff's left leg and left side, again insinuating he is a "*faggot, gay, sick with AIDS*" during his physical attack upon Plaintiff.

36.    All actions by ownership and management are ongoing & pervasive in their failure to make accessible accommodations, repairs of accessibility in a timely basis, control the abusive cursed at harassing threatening conduct of their employees.

37.    In addition, Plaintiff experienced retaliation in that he has not been receiving his rent bills since December 2020 to present. Additionally, for fiscal/calendar year 2020 Plaintiff did

11

not receive his security deposit interest check in violation of RSL-2525-4 Security Deposit Interest

Payments, NYS GOL-7-103- conversion

38.     When Plaintiff demanded his rent bill of February 2021, Defendants claimed that

he did not pay his rent for January 2021 when Plaintiff has the cancelled check and submitted the

cancelled check to Defendants for evidence of payment.


### COUNT I
### VIOLATION OF THE FAIR HOUSING ACT
**(Against Defendants)**

39.     Plaintiff realleges and incorporates by this reference all allegations set forth in this

Complaint as if fully set forth herein.

40.     The Fair Housing Act 42 U.S.C. § 3601, et seq., enacted as Title VIII of the Civil

Rights Act of 1968, amended in 1988, recognizes individuals with disabilities as a protected class.

41.     Fair Housing Act imposes strict liability upon each of the property owners, the

managing agent and their respective principals and employees.

42.     Plaintiff suffers from severe mobility impairment, which makes him a person with

a disability under FHA.

43.     Defendants violated the FHA by not responding to plaintiff's reasonable

accommodation requests and by failing to make reasonable accommodations for plaintiff's

disability and all present and future tenants with disabilities.

44.     Defendants continuously practice a pattern of unlawful discrimination against

plaintiff.

45.     Defendants have interfered with plaintiff in the exercise, peaceful and quiet

enjoyment of the use of his apartment and the common areas and amenities at the subject building.

12

46.     As a direct and proximate result of plaintiff's disability, defendants have directly and indirectly, refused, withheld from, and denied plaintiff the accommodations, advantages, facilities and privileges that plaintiff is entitled to - the rights to all of which the FHA seeks to protect from encroachment and violation.

47.     Defendants have discriminated against plaintiff in violation of the FHA by creating, fostering, condoning, accepting, ratifying, and otherwise failing to prevent or to remedy the discrimination and segregation against plaintiff.

48.     As a direct and proximate result of defendants' unlawful discrimination, in violation of the FHA, plaintiff has and continues to suffer the loss of use, and peaceful and quiet enjoyment of his home.

49.     As a direct and proximate result of defendants' unlawful discrimination, in violation of the FHA, plaintiff has and continues to endure segregation, physical injury and hardships, mental anguish, and emotional distress, including but not limited to depression, humiliation, stress, embarrassment, anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

50.     Plaintiff seeks punitive damages against the defendants because of defendants' willful and/or reckless disregard for plaintiff's rights under the FHA, in an amount to be determined at trial.

## COUNT II
## VIOLATION OF TITLE III OF THE ADA
### (Against Defendants)

51.     Plaintiff realleges and incorporates by this reference all allegations set forth in this Complaint as if fully set forth herein.

52.     Each of the defendants are public accommodations as they own, lease, lease to, control, manage or operate a leasing and management office located at the subject building and

2611 West 2nd Street Brooklyn New York, which is a place of public accommodation within the meaning of the ADA (42 U.S.C. § 12181 and 28 C.F.R. § 36.104), the Executive Law (§ 292(9)) and the Administrative Code (§ 8-102(9)).

53.     The services, features, elements and spaces of defendants' place of public accommodation are not readily accessible to, or usable by plaintiff as required by the Americans with Disabilities Act Accessibility Guidelines, 28 C.F.R. Part 36, Appendix A, and adopted by the Department of Justice as the Standards for Accessible Design ("Standards").

54.     Plaintiff has accessed, made attempts to access, and desires to access defendants place of public accommodation in the future.

55.     Numerous architectural barriers exist at defendants' place of public accommodation that prevent and/or restrict access to plaintiff, a person with a disability.

56.     Barriers to access that plaintiff encountered and/or which exist at the defendants' place of public accommodation, include, but are not limited to, the items below, and result from:

57.     Upon information and belief, a full inspection of the defendants' place of public accommodation will reveal the existence of other barriers to access.

58.     Defendant's place of public accommodation is not fully accessible and fails to provide an integrated and equal setting for the disabled all in violation of 42 U.S.C. §12182(b)(1)(A) and 28 C.F.R. § 36.203.

59.     Upon making alterations to their place of public accommodation, defendants failed to make it accessible to plaintiff to the maximum extent feasible in violation of 28 C.F.R. §§ 36.402 and 36.406.

60.     Upon information and belief, defendants made alterations to their place of public accommodation's primary function areas. Upon making these alterations to the primary function

areas, defendants failed to make the paths of travel to the primary function areas accessible to plaintiff, in violation of 28 C.F.R. § 36.403.

61.     Since the effective date of the Administrative Code §§ 27-292 et seq. (also known as "Local Law 58"), defendants have made alterations to their real property and/or their place of public accommodation.

62.     Defendants failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of 28 C.F.R. § 36.304. It would be readily achievable to make defendants' place of public accommodation fully accessible.

63.     By failing to remove the barriers to access where it is readily achievable to do so, defendants have discriminated against plaintiff on the basis of disability in violation of §§ 302(a) and 302(b)(2)(A)(iv) of the ADA, 42 U.S.C. § 12182(a), (b)(2)(A)(iv), and 28 C.F.R. § 36.304.

64.     In the alternative, defendants have violated the ADA by failing to provide plaintiff with reasonable alternatives to barrier removal as required by 28 C.F.R. § 36.305. Defendants' failure to remove the barriers to access constitutes a pattern and practice of disability discrimination in violation of 42 U.S.C. § 12188(b)(1)(B)(i), (b)(2)(A)(iv), and 28 C.F.R; §503(a).

65.     Defendants' discrimination against plaintiff in ongoing and pervasive in violation of the ADA by maintaining and/or creating an inaccessible place of public accommodation and housing.

66.     As a direct and proximate result of Defendants' unlawful actions, plaintiff has suffered and continues to suffer severe physical hardship, injury, mental anguish and emotional distress.

67.     Defendants' discriminatory actions in violation of the ADA are ongoing, pervasive, intentional, done with malice, and/or showed a deliberate, willful, wanton and reckless

indifference to Plaintiff's civil rights, for which he is entitled to an award of compensatory damages, monetary damages, and punitive damages, as well as other relief.

68.     That by reason of the foregoing, plaintiff suffered and continues to suffer irreparable injury and monetary damages in excess of $3,000,000.00, as well as punitive damages, costs, and attorneys' fees, and any other relief this Court may find just and proper.

<u>COUNT III</u>
<u>VIOLATION OF NEW YORK STATE EXECUTIVE LAW</u>
<u>(PENDENT JURISDICTION)</u>
**(Against Defendants)**

69.     Plaintiff realleges and incorporates by this reference all allegations set forth in this Complaint as if fully set forth herein.

70.     Plaintiff suffers from severe mobility impairment, which prevents the exercise of normal bodily functions in plaintiff, and thus suffers from a disability within the meaning of the Executive Law § 296(21).

71.     As a result of plaintiff's disability, plaintiff uses a walker, cane and/or wheelchair to assist with mobility.

72.     By refusing to make reasonable accommodations for the plaintiff's disability, defendants have committed a discriminatory practice in violation of the Executive Law §296(5).

73.     Defendants have discriminated against and continue to discriminate against the plaintiff by refusing to make reasonable accommodations in its rules, policies, practices, or services that are necessary to afford plaintiff equal opportunity for the, peaceful and quiet enjoyment of his housing accommodation and premises. Executive Law §296(18)(2).

74.     Defendants have discriminated and continue to discriminate against the plaintiff by refusing to make   reasonable modifications to the common areas of the building that are necessary to afford plaintiff equal opportunity for the peaceful and quiet enjoyment of his housing accommodation and premises. Executive Law §296(18)(2).

75.     Defendants have aided and abetted in discriminating against the plaintiff in violation of Executive Law §296(6).

76.     Defendants discriminated and continue to discriminate against plaintiff in violation of Executive Law by maintaining and/or creating an inaccessible apartment building and premises.

77.     It would not impose an undue hardship or undue burden on defendants to make the reasonable accommodations and modifications requested or to make their building fully accessible.

78.     Defendants discriminated against plaintiff in violation of New York State Executive Law § 296(2), by maintaining and/or creating an inaccessible place of public accommodation.

79.     Defendants have failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of Executive Law § 296(2)(c)(iii).

80.     In the alternative, defendants have failed to provide plaintiff with reasonable alternatives to barrier removal as required in violation of Executive Law § 296(2)(c)(iv). It would be readily achievable to make defendants' place of public accommodation fully accessible.

81.     As a direct and proximate result of defendants' unlawful discrimination in violation of New York State Executive Law, plaintiff has suffered, and continues to suffer physical distress and injury, hardships, emotional distress, including but not limited to humiliation, embarrassment, stress, and anxiety.

82.     Plaintiff has suffered damages in an amount to be determined at trial before a jury.

83.     Plaintiff seeks punitive damages against the defendants because of defendants' willful and/or reckless disregard for plaintiff's rights under the Executive Law, in an amount to be determined at trial but in any event no less than $3,000,000.00.

## COUNT IV
## VIOLATION OF THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK
## (PENDENT JURISDICTION)
### (Against Defendants)

84.      Plaintiff realleges and incorporates by this reference all allegations set forth in this Complaint as if fully set forth herein.

85.     Plaintiff suffers severe mobility impairment, which impairs his body's systems, and thus has a disability within the meaning of the Administrative Code § 8-102(16).

86.     As a result of plaintiff's disability, plaintiff is limited in his ability to walk, his ability to grasp, his range of body movement, as well as with activities that require exertion. As a direct and proximate result of his disability, plaintiff uses a wheelchair, walker and/or cane to walk.

87.     The Local Civil Rights Restoration Act of 2005 (the "Restoration Act"), also known as Local Law 85, clarified the scope of the Administrative Code in relation to the New York City's Human Rights Law. The Restoration Act confirmed the legislative intent to abolish "parallelism" between the Administrative Code and the Federal and New York State anti-discrimination laws by stating as follows:

1.  The provisions of this title shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title, have been so construed. Restoration Act § 7 amending Administrative Code §8-130.

88.     The Administrative Code requires landlords, owners, and managing agents, to make reasonable accommodations for tenants with disabilities. Administrative Code § 8-102(17).

89.     Refusing to make reasonable accommodations for tenants with disabilities constitutes discrimination and segregation from all able body persons/tenants. Administrative Code §8-107 (15)(a).

90.     By refusing to make reasonable accommodations and modifications for the plaintiff's disability, defendants have committed a discriminatory practice in violation of the Administrative Code §8-107(15)(a).

91.     Defendants discriminated against plaintiff in violation of Administrative Code of the City of New York, § 8-107, and Local Law 58 by maintaining and/or creating an inaccessible housing accommodation.

92.     Defendants have and continue to subject plaintiff to disparate treatment by directly and indirectly refusing, withholding, and denying reasonable accommodations, advantages, services, facilities, and privileges of their housing accommodation all because of disability in violation of Administrative Code § 8-107(5)(a)(2).

93.     Defendants have and continue to subject plaintiff to disparate treatment by directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their place of public accommodation and housing all because of disability in violation of Administrative Code § 8-107(4).

94.     Administrative Code §§ 19-152 and 7-210 impose a non-delegable duty on defendants to repave, reconstruct, repair, and maintain their abutting public sidewalk. As a result, the defendants' control, manage and operate their abutting public sidewalk, which includes the

portion of the sidewalk constituting the entrance to the public accommodation and subject buildings.

95.     Defendants' failure to construct and maintain an accessible, non-segregated entrance from the public sidewalk to their place of public accommodation/housing constitutes disability discrimination in a violation of the Administrative Code.

96.     Defendants discriminated against plaintiff in violation of Administrative Code § 8-107(4), and Local Law 58 by maintaining and/or creating an inaccessible place of public accommodation and housing.

97.     As a direct and proximate result of defendants' unlawful discrimination in violation of Administrative Code of the City of New York, plaintiff has suffered, and continues to suffer physical injury, distress and hardships, emotional distress, including but not limited to mental anguish, humiliation, stress, embarrassment, and anxiety.

98.     Defendants' refusal to make the subject housing accommodation buildings fully accessible to plaintiff was deliberate, calculated, egregious, and undertaken with reckless disregard to plaintiff's rights under the Administrative Code.

99.     It would not impose an undue hardship on defendants to make the reasonable accommodations requested or to make their housing accommodation, and place of public accommodation fully accessible. Administrative Code §8-102(18).

100.     Defendants' unlawful discriminatory conduct constitutes malicious, willful and wanton violations of the Administrative Code for which plaintiff is entitled to an award of punitive damages. Administrative Code § 8-502.

101.     By refusing to make the subject buildings, including the common areas, and areas of public accommodation, and the off-premises leasing and management office accessible to

20

plaintiff, defendants have unlawfully profited from their discriminatory conduct. Defendants did

so by collecting rental income from non-compliant space and amenities and retaining the money

that defendants were obligated to use to make the subject buildings, housing accommodation, and

the leasing and management office, a place of public accommodation, fully compliant and

accessible.

102.    Defendants' unlawful profits plus interest must be disgorged.

103.    Plaintiff has suffered damages in an amount to be determined at trial before a jury.

104.    Plaintiff seeks punitive damages against the defendants because of defendants'

willful and/or reckless disregard for plaintiff's rights under the Administrative Code in an amount

to be determined at trial but in any event no less than $3,000,000.00.

**COUNT V**
**VIOLATION OF THE FAIR HOUSING ACT —**
**SEXUAL HARASSMENT**
**(Against Defendants)**

105.    Plaintiff repeats the above paragraphs

106.    Plaintiff is a male and an aggrieved person as defined in 42 U.S.C. 3602(i), and

has suffered damages as a result of Defendants' conduct.

107.    The Apartment is a "dwelling" within the meaning of 42 U.S.C. 3604(b), as defined

by 42 U.S.C. 3602(h).

108.    By the actions and statements described above, the Defendants, and its agents and

employees, including Ira Teper have:

      a.    Discriminated against Plaintiff in the terms, conditions, or privileges of
the rental of dwellings, or in the provision of services or facilities in
connection therewith, because of sex, in violation of 42 U.S.C. § 3604(b);
      b.    Made statements that indicate discrimination based on sex, in violation
of Section 804 (c) of the Fair Housing Act, 42 U.S.C. § 3604(c);

21

      c.    Discriminated in the terms or conditions of residential real estate-related transactions because of sex, in violation of 42 U.S.C. § 3605; and

      d.    Coerced, intimidated, threatened, or interfered with Plaintiff in the exercise or enjoyment of, or on account of his having exercised or enjoyed, his rights granted or protected by Sections 804 and 805 of the Fair Housing Act, in violation of 42 U.S.C. § 3617.

109.    The actions of Defendants, including but not limited to the actions outlined above, constituted unwelcome sexual harassment and were directed at Plaintiff because of his sex in violation of the Fair Housing Act.

110.    The Defendants' conduct, and its agents and employees, including Ira Teper constitutes a pattern or practice of resistance to the full enjoyment of the rights granted by the Fair Housing Act, 42 U.S.C. §§ 3601, *et seq.*

111.    Plaintiff has been injured by the Defendants' discriminatory conduct.

112.    Plaintiff is an aggrieved person as defined in 42 U.S.C. § 3602(i), and has suffered damages as a result of the Defendants' conduct, and its agents and employees, including Ira Teper.

113.    The defendants' actions herein constitute discrimination on the basis of sex in violation of 42 U.S.C. 3604(b)

114.    The defendants' actions herein constitute discriminatory practices pursuant to 42 U.S.C. 3602(f).

115.    The actions of the defendants were intentional, willful, and taken in disregard for the rights of the plaintiff.

### COUNT VI

## VIOLATION OF THE FAIR HOUSING ACT
## HOSTILE HOUSING ENVIRONMENT
**(Against Defendants)**

116.    Plaintiff repeats the above paragraphs.

117.    The defendants' actions herein constitute discrimination on the basis of sex in violation of 42 U.S.C. 3604(b).

118.    The defendants' actions herein constitute discriminatory practices pursuant to 42 U.S.C. 3602(f).

119.    The Defendants tolerated and/or facilitated Ira Teper's pattern or sexual harassment towards Plaintiff, despite requests to investigate Ira Teper and intervene on behalf of Plaintiff.

120.    Ira Teper's actions and tolerance and/or facilitation of said acts were sufficiently pervasive and severe so as to create a hostile housing environment based on sexual harassment in violation of Plaintiff's rights, as protected by the Fair Housing Act, 42 U.S.C. 3617.

121.    The actions of the defendants were intentional, willful, and taken in disregard for the rights of the plaintiff.

122.    The actions of Ira Teper and Defendants were sufficiently severe and/or pervasive so as to interfere with and/or deprive the Plaintiff of his right to use or enjoy his home.

123.    The plaintiff is an aggrieved person as defined in 42 U.S.C. 3602(i), and has suffered damages as a result of the Defendants' described conduct.

## COUNT VII

## VIOLATION OF THE FAIR HOUSING ACT — RETALIATION
**(Against Defendants)**

124.    Plaintiff repeats the above paragraphs.

125.    The Plaintiff's acts of filing a complaint and complaining about Ira Teper constitute activities opposing the defendants' discriminatory practices.

126.    Defendants were aware of Plaintiff's protected activity.

127.    Defendants retaliated against Plaintiff by withholding rent bills and other retaliatory conduct.

128.    Defendants' acts as described herein constitute unlawful retaliation under the Fair Housing Act.

129.    The plaintiff is an aggrieved person as defined in 42 U.S.C. 3602(i), and has suffered damages as a result of the Defendants' described conduct.


## COUNT VIII
## VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW — SEXUAL HARASSMENT – NYC ADMIN. CODE 8-107(5)(a)(2)
**(Against Defendants)**

130.    Plaintiff repeats the above paragraphs.

131.    The apartment is a "housing accommodation" within the meaning of N.Y.C. Admin. Code 8-102(10) and 8-107[5].

132.    By the actions and statements described above, the Defendants, and its agents and employees, including Ira Teper have:

      a.    Discriminated against Plaintiff in the terms, conditions, or privileges of the rental of dwellings, or in the provision of services or facilities in connection therewith, because of sex, in violation of N.Y.C. Admin. Code 8-107[5](2).
      b.    Made statements that indicate discrimination based on sex, in violation of N.Y.C. Admin. Code 8-107[5](2).

      c.    Discriminated in the terms or conditions of residential real estate-related transactions because of sex, in violation of N.Y.C. Admin. Code 8-107[5](2).
      d.    Coerced, intimidated, threatened, or interfered with Plaintiff in the exercise or enjoyment of, or on account of his having exercised or enjoyed, his rights granted or protected by N.Y.C. Admin. Code 8-107[5](2).

133.    The actions of Defendants, including but not limited to the actions outlined above, constituted unwelcome sexual harassment and were directed at Plaintiff because of his sex in violation of N.Y.C. Admin. Code 8-107[5](2).

134.    The Defendants' conduct, and its agents and employees, including Ira Teper constitute a pattern or practice of resistance to the full enjoyment of the rights granted by N.Y.C. Admin. Code 8-107[5](2).

135.    Plaintiff has been injured by the Defendants' discriminatory conduct.

136.    Plaintiff has suffered damages as a result of Defendants' conduct, and its agents and employees, including Ira Teper.

137.    The defendants' actions herein constitute discrimination on the basis of sex in violation of N.Y.C. Admin. Code 8-107[5](2).

138.    The defendants' actions herein constitute discriminatory practices pursuant to N.Y.C. Admin. Code 8-107[5](2).

139.    The actions of the defendants were intentional, willful, and taken in disregard for the rights of the plaintiff.

140.    The defendants' actions as previously described herein constitute discrimination on the basis of sex in violation of N.Y.C. Admin. Code 8-107[5](2)

## **COUNT IX**

## VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW — RETALIATION – NYC ADMIN. CODE 8-107(7)
### (Against Defendants)

141.    Plaintiff repeats the above paragraphs.

142.    The Plaintiff's acts of complaining about disability discrimination constitute activities opposing the defendants' discriminatory practices and constitute the filing of a complaint.

143.    Defendants were aware of Plaintiff's protected activity.

144.    Defendants' acts as described herein constitute unlawful retaliation under N.Y.C. Admin. Code 8-107[7].

145.    The plaintiff is an aggrieved person and has suffered damages as a result of the Defendants' described conduct.

## COUNT X
## THE NEW YORK CITY HUMAN RIGHTS LAW
## HOSTILE HOUSING ENVIRONMENT
### (Against Defendants)

146.    Plaintiff repeats the above paragraphs.

147.    The defendants' actions herein constitute discrimination on the basis of sex in violation of the NYCHRL.

148.    The defendants' actions herein constitute discriminatory practices.

149.    The Defendants tolerated and/or facilitated Ira Teper 's pattern or sexual harassment towards Plaintiff, despite requests to investigate Ira Teper and intervene on behalf of Plaintiff.

150.     Ira Teper 's actions and tolerance and/or facilitation of said acts were sufficiently pervasive and severe so as to create a hostile housing environment based on sexual harassment in violation of Plaintiff's rights, as protected by the under N.Y.C. Admin. Code 8-107[7].

151.     The actions of the defendants were intentional, willful, and taken in disregard for the rights of the plaintiff.

152.     The actions of Ira Teper and Defendants were sufficiently severe and/or pervasive so as to interfere with and/or deprive the Plaintiff of his right to use or enjoy his home.

153.     The actions of the defendants were intentional, willful, and taken in disregard for the rights of the plaintiff.

154.     The actions of Ira Teper and Defendants were sufficiently severe and/or pervasive so as to interfere with and/or deprive the Plaintiff of his right to use or enjoy his home.

155.     The plaintiff suffered damages as a result of the Defendants' described conduct.


**COUNT XI**
**VIOLATION OF THE NEW YORK STATE EXECUTIVE LAW 296(5) —**
**SEXUAL HARASSMENT**
(**Against Defendants**)

156.     Plaintiff repeats the above paragraphs.

157.     Plaintiff is a male and an aggrieved person and has suffered damages as a result of Defendants' conduct.

158.     The Apartment is a "dwelling".

159.     By the actions and statements described above, the Defendants, and its agents and employees, including Ira Teper have:

a.     Discriminated against Plaintiff in the terms, conditions, or privileges of the rental    of dwellings, or in the provision of services or facilities in connection therewith,    because of sex, in violation of New York Executive Law 296(5).

b.    Made statements that indicate discrimination based on sex, in violation of New York Executive Law 296(5);

c.    Discriminated in the terms or conditions of residential real estate-related transactions because of sex, in violation of New York Executive Law 296(5); and

d.    Coerced, intimidated, threatened, or interfered with Plaintiff in the exercise or enjoyment of, or on account of his having exercised or enjoyed, his rights granted or protected by New York Executive Law 296(5).

160.    The actions of Defendants, including but not limited to the actions outlined above, constituted unwelcome sexual harassment and were directed at Plaintiff because of his sex in violation of the New York Executive Law 296(5).

161.    The Defendants conduct, and its agents and employees, including Ira Teper constitutes a pattern or practice of resistance to Plaintiff's full enjoyment of his rights granted by the NYSHRL.

162.    Plaintiff has been injured by the Defendants' discriminatory conduct.

163.    Plaintiff is an aggrieved person and has suffered damages as a result of the Defendants conduct, and its agents and employees, including Ira Teper.

164.    The defendants' actions herein constitute discrimination on the basis of sex in violation of New York Executive Law 296(5).

165.    The defendants' actions herein constitute discriminatory practices pursuant to NYSHRL.

166.    The actions of the defendants were intentional, willful, and taken in disregard for the rights of the plaintiff.

**COUNT XII**
**VIOLATION OF THE NEW YORK EXECUTIVE LAW 296 (6)**
**(Against Defendants)**

167.     Plaintiff repeats the above paragraphs.

168.      The defendants' actions herein constitute discrimination on the basis of sex in violation of NYSHRL.

169.     The defendants' actions herein constitute discriminatory practices pursuant to NYSHRL.

170.     The Defendants tolerated and/or facilitated Ira Teper's pattern or sexual harassment towards Plaintiff, despite requests to investigate Ira Teper and intervene on behalf of Plaintiff.

171.     Ira Teper's actions and tolerance and/or facilitation of said acts were sufficiently pervasive and severe so as to create a hostile housing environment based on sexual harassment in violation of Plaintiff's rights, as protected by the New York State Human Rights Law, New York Executive Law 296(6), Defendants aided and abetted unlawful discrimination against Plaintiff on the basis of sex.

172.     The actions of the defendants were intentional, willful, and taken in disregard for the rights of the plaintiff.

**COUNT XIII**
**VIOLATION OF THE NYSHRL — RETALIATION**
**(Against Defendants)**

173.     Plaintiff repeats the above paragraphs.

174.     The Plaintiff's acts of complaining about Ira Teper constitute activities opposing the defendants' discriminatory practices and constitute the filing of a complaint.

175.     Defendants were aware of Plaintiff's protected activity.

176.    Defendants' actions as described herein, namely its gross and intentional failure to provide Plaintiff with a rent check, taken after the plaintiff's protected activity were motivated by the plaintiff's protected activity.

177.    Defendants' acts as described herein constitute unlawful retaliation under the NYSHRL.

**COUNT XIV**
**NEGLIGENT HIRING, SUPERVISION AND RETENTION**
**(Against Defendants)**

178.    Plaintiff **DAVID LEVY** repeats and realleges by reference each and every allegation contained in the above stated paragraphs, and incorporates the same herein as though fully set forth.

179.    That it was the duty of defendants to properly interview, investigate and supervise the background of its employees to ensure said employees, including defendant, did not present a risk of injury to the Plaintiff, **DAVID LEVY,** and other residents of the premises.

180.    That defendants, by and through their agents and/or employees breached their duty to Plaintiff, **DAVID LEVY,** in failing to properly interview, investigate and supervise the background of its employees, including Ira Teper, to ensure said employees did not present a risk of injury to Plaintiff, **DAVID LEVY,** and the tenants of the premises, which resulted in severe emotional distress to Plaintiff, **DAVID LEVY.**

181.    That Ira Teper was acting within the scope of his employment at the time he stalked, harassed, aggravated, endangered, intimidated, and threatened Plaintiff, **DAVID LEVY**.

182.    That defendants by their servants, agents, and/or employees had actual and constructive notice of the offensive conduct and violent propensities of Ira Teper.

183.	That defendants by their servants, agents, and/or employees received prior complaints from Plaintiff **DAVID LEVY** and employees at the premises regarding the violent propensities and offensive conduct of Ira Teper.

184.	That defendants by their servants, agents, and/or employees continued to employ and/or retained Ira Teper, after receiving actual and constructive notice of the offensive conduct and violent propensities of Ira Teper.

185.	That it was foreseeable to defendants that a foreseeable violent attack would occur, based on defendants' actual and constructive knowledge Ira Teper's escalating bad behavior toward Plaintiff.

186.	That the foregoing occurrence was caused solely and wholly as a result of the negligence of the defendants, their agents, servants and employees, without any negligence on the part of the Plaintiff contributing thereto.

187.	That by reason of the foregoing, the Plaintiff was caused to suffer mental and emotional shock and distress and was damaged thereby.

188.	That Plaintiff has been damaged in an amount no less than $3,000,000.00.

189.	That Plaintiff is entitled to punitive damages as defendants' wrongdoing evinces a high degree of moral turpitude and demonstrates such wanton dishonesty as to imply criminal indifference to civil obligations.


## <u>JURY DEMAND</u>

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter an Order that:

a.  Declares that the Defendants' discriminatory practices violate the Fair Housing Act, 42 U.S.C. §§ 3601, *et seq.* and New York State and City laws;

b.  Enjoins the Defendants, their agents, employees, and successors, and all other persons in the active concert or participation with them from:

    i.  Discriminating on the basis of sex and disability, including engaging in sexual harassment, in any aspect of the rental or sale of a dwelling;

    ii.  Interfering with or threatening to take any action against any person engaged in the exercise or enjoyment of rights granted or protected by the Fair Housing Act and New York State and City laws;

    iii.  Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of the Defendants' past unlawful practices to the position they would have been in but for the discriminatory conduct; and

    iv.  Failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate, as nearly as practicable, the effects of the Defendants' unlawful practices;

c.  Awards monetary damages to Plaintiff aggrieved by the Defendants' discriminatory conduct, pursuant to 42 U.S.C. § 3614(d)(1)(B) and 15 U.S.C. § 1691e(h), New York State Law, and New York City Laws;

d.  Awarding the Plaintiff compensatory and punitive damages, costs, attorney's

fees and such other relief as the Court deems appropriate.

e.   Assesses civil penalties against the Defendants to vindicate the public

interest, pursuant to 42 U.S.C. § 3614(d)(1)(C); and

f.   Awards such additional relief as the interests of justice may require.

Dated: June 21, 2021
         New York, New York

                                    Respectfully submitted,

                                    MARK DAVID SHIRIAN P.C.


                                    By: _____
                                         Mark D. Shirian, Esq.
                                    228 East 45th Street, Suite 1700-B
                                    New York, New York 10017
                                    Telephone: (212) 931-6530
                                    Facsimile: (212) 898-0163
                                    Email: mshirian@shirianpc.com
                                    COUNSEL FOR PLAINTIFF