UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID LEVY,<br><br>     Plaintiff,<br><br> -against-<br><br>LAWRENCE GARDENS APARTMENTS DEL, LLC, LAWRENCE GARDENS APARTMENTS, LLC, CAMMEBY'S REALTY CORP., CAMMEBY'S FUNDING, LLC, CAMMEBY'S MANAGEMENT COMPANY, LLC, REVONA PROPERTIES, and APARTMENT MANAGEMENT ASSOCIATES LLC,<br><br>     Defendants. | **MEMORANDUM AND ORDER**<br>Case No. 21-CV-1415 (FB) (SJB) |

*Appearances*:
*For the Plaintiff*:
ROOSEELT JEAN
Law Offices of Roosevelt Jean, LLC
400 Tenafly Rd Unit 46
Tenafly, NJ 07670

MARK SHIRIAN
228 East 45th St.
New York, NY 10017

*For Defendants*:
JACK BABCHIK
Kaufman Dolowich Voluck
245 Main St., Ste 330
White Plains, NY 10601

**BLOCK, Senior District Judge:**

  Plaintiff David Levy ("Levy") brought this action against Lawrence Gardens Apartments Del, LLC, Lawrence Gardens Apartments, LLC, Cammeby's Realty Corp., Cammeby's Funding, LLC, Cammeby's Management Company, LLC,

1

Revona Properties, and Apartment Management Associates LLC (collectively, "Lawrence Gardens") alleging violations of the Fair Housing Act, 42 U.S.C. § 3601, et seq. ("FHA"), the Americans with Disabilities Act of 1990 ("ADA"), and various state and local laws. Levy alleges several claims relating to the accessibility of the building he resides in and harassing behavior by its employees. Before this Court is Lawrence Gardens's motion to dismiss Levy's claims arising under federal law under Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed below, Lawrence Gardens's motion to dismiss is granted.

## I. SUMMARY OF THE ALLEGATIONS

The following facts are taken from the Amended Complaint unless otherwise noted and are accepted as true for the purposes of this motion. *See Relevent Sports, LLC v. United States Soccer Fed'n, Inc.*, 61 F.4th 299, 306 (2d Cir. 2023). Levy also attaches to his Opposition a lengthy affidavit he styles as a "Certification" which asserts dozens of new allegations not included in his Amended Complaint. Courts widely discourage this practice, as "[p]laintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to [a] motion to dismiss." *K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013); *see New York v. Mountain Tobacco Co.*, 55 F. Supp. 3d 301, 315 (E.D.N.Y. 2014) ("a plaintiff may not supplement a deficient pleading through additional facts contained in affidavits.").

However, in the interest of judicial economy, and because Levy's Certification does not change the outcome of Lawrence Gardens's Motion to Dismiss, the Court takes Levy's Certification as a request for leave to amend his Amended Complaint, which it grants. On Lawrence Gardens's Motion, the Court accordingly analyzes allegations contained in both the Amended Complaint and the Certification (the "Affidavit"). The Court will entertain no further amendment requests from Levy.

Levy is a current tenant in an apartment building located at 3315 Nostrand Avenue in Brooklyn, New York. Levy requires the assistance of a walker. The building is owned by Lawrence Gardens Apartments Del, LLC and managed by Apartment Management Associates, LLC, which does business as Revona Properties.

3315 Nostrand Avenue is part of a complex of residential buildings addressed as 3301, 3315, and 3323 Nostrand Avenue (the "Complex") which dates to 1961. The Complex has 141 apartments, divided between two wings across six floors. Three of the four entrances to the Complex contain ramps, save for the main entrance. The Complex also has two pools in the rear of the property. The Complex's sunken lobby requires ascending and descending sets of two-to-four steps in order to exit and enter the main lobby area. A passageway parallel to the main lobby allows access to both sides of the building without needing to pass through the lobby or use the stairs.

3

Levy alleges that he has struggled or been unable to access several areas of the Complex since he has been disabled. He complained to the New York State Division of Human Rights ("DHR"), which visited the Complex twice between 2016 and 2017. In a field study, DHR found that a lift and ramp could be installed on the inaccessible steps into and out of the main lobby, and that the lobby's doors required excessive force to open. In response, Lawrence Gardens installed levers on one door leading to an exit ramp, which is locked at 5:00 pm nightly.

Levy claims that he faced sexual discrimination and harassment twice at the hands of Lawrence Gardens's former purchasing director Ira Teper ("Teper"), who in 2016, after Levy complained to DHR, berated Levy with homophobic slurs in the Complex's pool area. Specifically, Teper allegedly "screamed at Plaintiff . . . claiming that Plaintiff is a 'faggot', 'gay', 'has anyone ever seen him with a woman', 'he must be buying prostitutes' [and] 'he probably has AIDS.'" Amend. Compl. ¶ 32. Teper also allegedly kicked Levy in August 2019, "again insinuating he is a 'faggot, gay, sick with AIDS,'" and expressing anger about a lawsuit. Amend. Compl. ¶ 35. Levy alleges that Complex staff repeatedly referred to him by the Spanish terms "pendejo" and "Chupacabra." Levy Cert. ¶ 98. Levy was also told by Lawrence Gardens CEO Jay Rosenfield ("Rosenfield") in the fall of 2018 that he was "the head of the snake, an activist, and agitator, and the only way to kill a snake is to cut its head off." *Id*. ¶ 24. Rosenfield also asked Levy if he would

visit rehab, a nursing home, or move, offering him a free moving van. Levy Cert. ¶ 26. Peter Neglia ("Neglia"), director of risk management, allegedly told Levy on an unspecified date that "it would be better 'for my health and well-being'" if Levy withdrew his complaint and litigation against Lawrence Gardens. Levy Cert. ¶ 25. Levy also alleges that he did not receive interest on his security deposit as required under New York law and that his rent check was withheld after he complained to DHR in 2016 about the conditions of the Complex.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] court may consider the complaint as well as any written instrument attached to [the complaint] as an exhibit" in making this determination, *Kalyanaram v. Am. Ass'n of Univ. Professors at New York Inst. of Tech., Inc.*, 742 F.3d 42, 44 n.1 (2d Cir. 2014) (internal quotation omitted), as well as "matters of which judicial notice may be taken," *Naughright v. Weiss*, 857 F. Supp. 2d 462, 468 (S.D.N.Y 2012). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss

does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.*, 550 U.S. at 555. "[T]he proper question is whether there is a permissible relevant inference from all of the facts alleged, taken collectively, not whether an inference is permissible based on any individual allegation, scrutinized in isolation." *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (internal quotation omitted).

### III. DISCUSSION

Lawrence Gardens asks the Court to dismiss Levy's federal claims and decline supplemental jurisdiction over the remaining state law claims.

### a. Plaintiff's FHA Discrimination Claim

Plaintiff alleges that Lawrence Gardens violated the FHA "by failing to design, construct and manage the subject buildings so as to be accessible to persons with disabilities," and "by not responding to plaintiff's reasonable accommodation requests and by failing to make reasonable accommodations for plaintiff's disability and all present and future tenants with disabilities." Amend. Compl. ¶ 1, 43.

The 1988 amendments to the Fair Housing Act ("FHA") prohibit housing discrimination against disabled individuals. 42 U.S.C. § 3604(f). The FHA bars the

"refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises," the "refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling," and the "failure to design and construct" accessible buildings. 42 U.S.C.A. § 3604(f)(3)(A)-(C).

The prohibition concerning design and construction only governs buildings constructed for first occupancy after March 13, 1991. *See* 42 U.S.C.A. § 3604(f)(3)(C) (pertaining to "the design and construction of covered multifamily dwellings for first occupancy after the date that is 30 months after September 13, 1988"); *Reyes v. Fairfield Properties*, 661 F. Supp. 2d 249, 262 (E.D.N.Y. 2009) ("only those multi-family dwellings constructed for first occupancy after March 13, 1991 are subject to [the design] requirements"). Levy concedes that the Complex was built in 1961, abandoning his discriminatory construction claim.

Levy also alleges that Lawrence Gardens discriminated against him in violation of the FHA by "refus[ing] to make reasonable accommodations in rules, policies, practices, or services." 42 U.S.C.A. § 3604(f)(3)(B). The FHA's requirement for reasonable accommodations is not limited to buildings built after a certain date. A plaintiff alleging discrimination based on a landlord's refusal to

accommodate must plead that: "(1) he suffers from a handicap as defined by the FHAA; (2) defendants knew or reasonably should have known of the plaintiff's handicap; (3) accommodation of the handicap may be necessary to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation." *Dinapoli v. DPA Wallace Ave II, LLC*, No. 07CIV.1409PAC, 2009 WL 755354, at *5 (S.D.N.Y. Mar. 23, 2009) (internal quotation omitted).

Lawrence Gardens argues that Levy's reasonable accommodations claim fails because he effectively demands that they "construct or reconstruct wholly new facilities, features or building elements to accommodate his disability," instead of identifying "rules, policies, practices, or services" that are discriminatory under § 3604(f)(3)(B). Mot. Dismiss at 9. *See Reyes*, 661 F. Supp. 2d at 259 ("wholly new construction or modifications of existing premises is not mandated by the reasonable accommodations provision of the FHAA").

There is no bright line between policies undertaken by a building's management, which are challengeable under § 3604(f)(3)(B), and requests for "wholly new construction or modification of existing premises," which are not. *Id.* at 259 (decisions not to designate handicapped parking or repair a driveway were challengeable under § 3604(f)(3)(B)); *see also Dinapoli*, 2009 WL 755354, at *1 (restricting access to elevator during certain hours challengeable under

8

§ 3604(f)(3)(B)); *United States v. Tanski*, No. 1:04 Civ. 714, 2007 WL 1017020, at *23 (N.D.N.Y. Mar. 30, 2007) (alleged failure to make repairs to an existing ramp could support liability for failure to accommodate).

Levy argues that a number of problems with the Complex are challengeable policies, including Lawrence Gardens's lack of wide "designated handicapped parking spaces," failure to maintain elevators and automatic doors, and locking handicap entrances to the lobby each evening. Amend. Compl. ¶ 10. To plead a reasonable accommodation claim, a plaintiff must allege that defendants "refused to make such accommodation." *Dinapoli*, 2009 WL 755354, at *5 (internal quotation omitted). Levy pleads no facts, however, that he requested a handicapped spot from Lawrence Gardens and was refused one. *Cf. Reyes*, 661 F. Supp. at 257 (plaintiff requested and was denied accessible parking). Likewise, he does not allege that he asked Lawrence Gardens to maintain the elevators and automatic doors or requested 24-hour access to the accessible lobby doors, let alone that Lawrence Gardens refused these requests. His FHA discrimination claim must therefore be dismissed.

### b. Levy's FHA Hostile Housing Environment Claim

The FHA prohibits discrimination "in the sale or rental, or to otherwise make unavailable or deny" housing on the basis of "sex" or because of a person's handicap, as well as discrimination "in the provision of services or facilities in

9

connection with such dwelling, because of . . . sex" or "handicap." 42 U.S.C. §§ 3604(a), (b) (f)(1), (f)(2). "Courts in this Circuit have construed Section 3604(b) of the FHA to prohibit the creation of a hostile environment by individuals who have control or authority over the terms, conditions, or privileges of sale or rental of a dwelling,' similar to the prohibition imposed by Title VII against the creation of a hostile work environment." *Favourite v. 55 Halley St., Inc.*, 381 F. Supp. 3d 266, 277 (S.D.N.Y. 2019) (quoting *Cain v. Rambert*, No. 13-CV-5807 MKB, 2014 WL 2440596, at *5 (E.D.N.Y. May 30, 2014)).

A plaintiff making a hostile housing environment claim must establish that "(1) [he] was subjected to harassment that was sufficiently pervasive and severe so as to create a hostile [housing] environment, (2) the harassment was because of the plaintiff's membership in a protected class, and (3) a basis exists for imputing the allegedly harassing conduct to the defendants," as well as "a relationship between the discriminatory conduct and housing." *Cain*, 2014 WL 2440596, at *5 (cleaned up).

1. **Timeliness**

FHA claims must be brought within two years of the "occurrence or the termination of an alleged discriminatory housing practice." 42 U.S.C.A. § 3613(a)(1)(A). Levy alleges discrimination and harassment from Complex employees on multiple occasions. First, he claims Teper harassed him twice: when

Teper insulted him in August 2016 and kicked him in August 2019, both in the pool area. The 2016 incident, occurring more than two years before Levy filed suit in March 2021, is time-barred. The August 2019 incident falls within two years of March 2021 and therefore is not. Next, Levy alleges that Rosenfield compared him to a snake and threatened him in the fall of 2018, an allegation which is also time-barred. Levy also claims he faced a hostile housing environment when Complex employees repeatedly called him a "pendejo" between 2016 and the present. Finally, Levy points to Rosenfield's suggestion that he should move to rehab or a nursing home. Levy does not specify a date for this incident, but it cannot support a hostile environment claim in any event for reasons explained below.

    Levy argues that the harassment was a "continuing violation" which extended the limitations period to two years after the final harassing act, here alleged to have occurred in 2019. *Tejada v. LittleCity Realty LLC*, 308 F. Supp. 3d 724, 733 (E.D.N.Y. 2018). A continuing violation requires "an ongoing policy of discrimination which extend into the limitations period." *Favourite*, 381 F. Supp. 3d 266, 278-79 (S.D.N.Y. 2019). Finding a continuing violation is "disfavored" in the Second Circuit, "applied only upon a showing of compelling circumstances." *Id.* (internal quotation omitted). Levy has not alleged a continuing violation here because he pleads only sporadic incidents over 4 years and no compelling circumstances.

11

## 2. Whether the Remaining Allegations Can Support a Hostile Environment Claim

This leaves the question of whether the alleged harassment that took place after March 2019—being kicked by Teper and called "pendejo," as well as Rosenfield's undated "rehab" comment—could have created a hostile housing environment. "For the conduct to constitute harassment such that it creates a hostile environment under the FHA, it must be pervasive and not merely isolated or sporadic." *Favourite*, 381 F. Supp. 3d at 278, a standard borrowed from the Title VII context, *Cain*, 2014 WL 2440596, at *4. "[T]he conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Littlejohn v. City of New York*, 795 F.3d 297, 321 (2d Cir. 2015) (internal quotation omitted) (Title VII claim). Considerations include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance." *Id.* (internal quotation omitted).

Levy does not allege that any verbal abuse accompanied Teper's 2019 physical attack. He only claims that Tepper's attack "insinuate[ed]" the same insults Tepper subjected him to in the alleged 2016 incident. Compl. ¶ 35. The 2019 incident is therefore not alleged to be sufficiently severe to create a hostile environment.

Nor can the Spanish name-calling support a hostile housing environment claim. Alleged harassment must be on the basis of Levy's disability or sex under 42 U.S.C. § 3604. Levy alleges that he understood the Spanish term staff used to refer to him, "pendejo," to mean "goat sucking faggot." Levy Cert. ¶ 98. But that is not a plausible meaning of the slang term, which ordinarily means "idiot." *Gueye v. Evans*, No. 04 CIV. 6029 (SHS), 2006 WL 3298427, at *1 n.2 (S.D.N.Y. Nov. 13, 2006) ("Vendejo," or its variant "pendejo," is translated as "fool" or "idiot.") (citing Collins Spanish Dictionary 377 (2d Ed. 1993)).[1] Finally, Rosenfield's comments about whether Levy planned to go to rehab or a nursing home is similarly not sufficiently serious to support a hostile environment. Levy's FHA harassment claim must therefore be dismissed.

**c. Levy's ADA Claim**

Title III of the ADA prohibits discrimination in places of public accommodation on the basis of disability. "[P]ublic accommodations" under the

---

[1] Levy also alleges in the Affidavit that he was called a "Chupacabra," which he also claims to mean "goat sucking faggot" based on the mythological animal's "reported vampirism." Levy Cert. ¶ 98, 98 n.2. But sucking blood in the literal sense does not suffice to charge a nickname with sex prejudice, even under the term's "broader scope," endorsed by the Supreme Court, which "captur[es] more than anatomy and reach[es] at least some norms concerning gender identity and sexual orientation." *Bostock v. Clayton Cnty., Georgia*, 207 L. Ed. 2d 218, 140 S. Ct. 1731, 1739 (2020) (holding that Title VII's prohibition on adverse employment action "on the basis of sex" encompasses sexual orientation and gender identity in addition to biological sex").

13

ADA include private facilities whose operations "affect commerce." 42 U.S.C. § 12181(2)(B). Levy claims Lawrence Gardens is covered under the ADA because its management office, pool, and parking garage are places of public accommodation on the basis that they "affect commerce" under 42 U.S.C. § 12181.

But each of the places Levy highlights are part of the Complex, which is a residential facility, and "[a] residential facility, such as an apartment, is not a public accommodation under the ADA" as a matter of law. *Reid v. Zackenbaum*, No. 05-CV-1569 (FB), 2005 WL 1993394, at *4 (E.D.N.Y. Aug. 17, 2005). Levy argues that these locations are turned into places of public accommodation when visited by residents' guests, but this argument falls flat. "Merely because residents do not actively 'reside' in certain portions of the facility such as the laundry room or parking area, this does not convert them into 'nonresidential' or 'public' accommodations." *Champlin v. Sovereign Residential Servs.*, 2008 WL 2646627, at *5 (M.D. Fla. 2008) (cleaned up). Even if they were not part of a residential facility, Levy does not plead any facts to support his contention that their use by guests affects commerce. Levy's ADA claim must therefore be dismissed.

**e. Levy's Retaliation claim**

The FHA makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . . any right granted or protected by" the statute. 42 U.S.C. § 3617. A

14

plaintiff claiming retaliation must allege that "(1) [he] engaged in protected activity by opposing conduct prohibited [by the FHA], (2) [the defendants] were aware of that activity, (3) [he] was subject to an adverse action, and (4) there was a causal connection between the protected activity and the adverse action." *Broome v. Biondi*, 17 F. Supp. 2d 211, 218-19 (S.D.N.Y. 1997) (citing *Manoharan v. Columbia Univ. College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988)). The adverse action must "coerce, intimidate, threaten, or interfere with" him. *Joseph's House & Shelter, Inc. v. City of Troy*, 641 F. Supp. 2d 154, 159 (N.D.N.Y. 2009) (quoting 42 U.S.C. § 3617).

Levy alleges that after he filed his complaint with DHR for disability discrimination in 2016, he was retaliated against by Lawrence Gardens when: (1) Lawrence Gardens withheld his rent bills; (2) Teper kicked him in 2019 while mentioning unrelated litigation against Lawrence Gardens; (3) Rosenfield asked in 2018 if he was moving and called him a snake; and (4) Neglia told him at an unspecified date that it would be "better for my health" if Levy dropped his DHR complaint and lawsuit against Lawrence Gardens. Levy Cert. ¶ 25.

Lawrence Gardens argues that Levy's retaliation claim fails because he does not plead that he was adversely affected by the alleged retaliatory acts. The only adverse effect Levy alleges is that he "worried that the landlords will force [him] to move by claiming late or non-payments and trying to evict [him]" as a result of the

15

retaliation. Levy Cert. ¶ 29. The Second Circuit has held that a fear of being evicted in the future cannot alone support a retaliation claim without other allegations of adverse effects. *Davis v. Vill. Park II Realty Co.*, 578 F.2d 461, 464 (2d Cir. 1978) (plaintiff could not assert retaliation claim solely on the basis of her landlord's abandoned eviction proceeding against her and her resulting fear of eviction in the future). Levy's retaliation claim must therefore be dismissed.[2]

### e. Levy's Remaining State and Local Law Claims

Levy's claims under federal law have been dismissed, leaving only his state and local law claims. The Court declines to exercise supplemental jurisdiction over these claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction"). When "all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013) (cleaned up). Because New York state courts are

---

[2] Because Levy has not alleged a cognizable adverse effect, the court need not address causation.

better suited to adjudicate Levy's remaining claims, declining to exercise jurisdiction is in the interest of judicial economy and comity with state courts.

## IV. CONCLUSION

Lawrence Gardens's motion to dismiss is granted. The Court declines to exercise supplement jurisdiction over Levy's remaining state and local claims.

**SO ORDERED.**

    /S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
March 28, 2023